UNITED STATES of America, Plaintiff–Appellee,

v.

John Clyde WALKINGEAGLE, Defendant–Appellant.

No. 91–5420.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1992.

Decided Sept. 8, 1992.

---

Stephen Paul Lindsay, Lindsay & True, Asheville, N.C., argued, for defendant-appellant.

Thomas Richard Ascik, Asst. U.S. Atty., Asheville, N.C., argued (Thomas J. Ashcraft, U.S. Atty., on brief), for plaintiff-appellee.

Before HALL and HAMILTON, Circuit Judges, and KELLAM, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

John Walkingeagle, an American Indian, appeals his conviction under the Major Crimes Act, 18 U.S.C. §§ 1153, 3242 (the "Act") of assault by striking, beating or wounding. Walkingeagle argues that the district court lost jurisdiction over lesser-included offenses when it entered a judgment of acquittal on the felony counts. We affirm.

### I.

John Walkingeagle and his girlfriend, Melissa Garcia, were at Garcia's uncle's house on the Cherokee Indian Reservation in western North Carolina. When Garcia's uncle and Walkingeagle began to argue, Garcia left the house. Walkingeagle pursued her and became physically abusive and belligerent. He pushed her, pulled her hair, poured beer over her head, and tried to force her to drink. Finally, he kicked her and hit her in the face, lacerating her lip.

Walkingeagle was charged with assault and battery in Cherokee tribal court. Subsequently, federal prosecutors indicted him for assault with a dangerous weapon (his fist) with intent to do bodily harm, 18 U.S.C. § 113(c) (1988), and assault resulting in serious bodily injury (a lacerated lip), 18 U.S.C. § 113(f). After Walkingeagle was indicted, the simple assault charge in the tribal court was voluntarily dismissed without prejudice.

Walkingeagle was tried before a jury. At the close of the government's case,

Walkingeagle moved for a judgment of acquittal on both counts pursuant to Fed. R.Crim.P. 29(a). The court granted the motion from the bench, finding the evidence insufficient to sustain conviction on the crimes charged.[1] Over Walkingeagle's objection, the court instructed the jury on the lesser-included offense of assault by striking, beating, or wounding, in violation of 18 U.S.C. § 113(d).

The jury returned a verdict of guilty, and the court sentenced Walkingeagle to six months of imprisonment. This appeal followed.

## II.

■ We must decide whether the district court retained jurisdiction over the lesser-included offense after it granted judgment of acquittal on the statutory felony counts. Jurisdiction over certain specified felonies committed by Indians on Indian lands was conferred on the federal courts in 1885 when Congress passed the Act. Jurisdiction over non-enumerated crimes was not expressly conferred on the federal courts and ordinarily remains in the Indian tribal courts.

The question of jurisdiction over lesser-included offenses under the Act arose in *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). The Supreme Court interpreted § 3242 of the Act, which states that "[a]ll Indians committing any offense listed in the first paragraph of and punishable under section 1153 (relating to offenses committed within Indian country) of this title shall be tried in the same courts and in the same manner as are all other persons committing such offense within the exclusive jurisdiction of the United States." Based on the clear language of the statute, the Court held that Congress intended for Indians to benefit from a lesser-offense instruction in the same way as non-Indians charged with the

same offenses. *Id.* 412 U.S. at 210–212, 93 S.Ct. at 1997.

. *Keeble* settled the threshold question of whether the federal courts can *ever* have jurisdiction over non-enumerated offenses in prosecutions under the Act. *See also United States v. Bowman,* 679 F.2d 798 (9th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1204, 75 L.Ed.2d 445 (1983); *United States v. John,* 587 F.2d 683 (5th Cir.), *cert. denied,* 441 U.S. 925, 99 S.Ct. 2036, 60 L.Ed.2d 399 (1979); *Felicia v. United States,* 495 F.2d 353 (8th Cir.), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974). Walkingeagle distinguishes *Keeble* by arguing that the trial court in that case charged the jury on the felony count along with the lesser offense. He concedes that the district court has jurisdiction over the lesser-included offense if the greater offense is also submitted to the jury, but he argues that the court has no jurisdiction over the lesser offense if it enters a judgment of acquittal on the charged felony counts.

■ Although *Keeble* was decided in the context of an Indian defendant's request for an instruction on a lesser-included offense, the case turns on the language of § 3242's procedural provision that trials under the Act shall be conducted in the same way as other federal criminal trials. Thus, a federal court has jurisdiction over a non-enumerated offense if, *as a matter of federal trial procedure,* the court is permitted to instruct the jury on the lesser-included, non-enumerated offense.

■ As a matter of procedure, a court may submit an uncharged lesser-included offense to the jury; Fed.R.Crim.P. 31(c) clearly establishes this procedure. Though this rule was originally intended to aid prosecutors whose proof of the charged offense failed, defendants more often invoke the procedure as a means of giving the jury a less serious alternative. *See* 8A

1. Specifically, the court found that a single blow to Garcia's mouth by defendant's hand did not make the hand a "dangerous weapon," or "an object used in a manner likely to endanger life or inflict serious bodily harm." The court also found that the laceration of Garcia's lip "failed

to rise to the level of a 'serious bodily injury,' in that it was not 'more than slight and [not] of a grave and serious nature.'" *United States v. Walkingeagle,* No. B–CR–91–105, slip op. at 2 (W.D.N.C. Oct. 3, 1991).

Moore's Federal Practice ¶ 31.03[1] (2d ed. 1991). Though couching his argument in terms of jurisdiction, Walkingeagle actually wants us to make Rule 31(c) a one-way street, open only to him but not to the government. *See Kelly v. United States*, 370 F.2d 227, 229 (D.C.Cir.1966) ("Although the [lesser-included offense] doctrine may also be invoked by defendant, his right to invoke it does not extend beyond the right of the prosecutor."), *cert. denied*, 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967). In other words, he would have us fashion a new rule of procedure for the federal courts that deal with the Act. We believe that when Congress granted jurisdiction over major felonies committed by Indians, it granted jurisdiction over all offenses included within those felonies to the extent that federal trial procedure would allow the jury to return a verdict on the lesser offenses. Our reasoning is based on the reality that a lesser-included offense is an offense that is necessarily committed upon the commission of another offense, i.e., it is "impossible to commit the greater without also having committed the lesser." *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Because of the relationship between an offense and any lesser-included offenses, a jury may convict on a lesser-included offense if all the elements are proven after it determines that the evidence is insufficient on the greater offense. Consequently, there is no loss of jurisdiction over the lesser offense as a result of the jury's evaluation of the evidence in relation to the greater offense.

*Keeble* shows that there is no loss of jurisdiction over the lesser-included offense where the jury finds the evidence of the "major crime" insufficient, likewise there is no loss of jurisdiction when the judge performs the same function. For purposes of jurisdiction over the lesser-included offense, we see no significance in who makes the initial determination on the sufficiency of the evidence as to the greater offense— the judge or the jury. The district court's jurisdiction is conferred by a valid indictment charging a violation of the Act. We hold that, at trial, this jurisdiction may be exercised "in the same manner" as any other federal criminal trial.

The district court properly submitted the lesser-included offense of assault by striking, beating, or wounding to the jury, notwithstanding that it granted acquittal on the felony counts. Consequently, the judgment is affirmed.

AFFIRMED.

HAMILTON, Circuit Judge, dissenting:

Today's decision unnecessarily expands the criminal jurisdiction of the federal courts beyond that expressly prescribed by Congress; therefore, I respectfully dissent. The conviction should be reversed and the case dismissed for lack of jurisdiction.

It is axiomatic that federal courts are not courts of general criminal jurisdiction, but rather derive their authority to punish crimes solely from the Constitution, enactments of Congress, and treaties. *See, e.g., United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812). Federal courts must exercise restraint to ensure that they do not exceed the jurisdiction properly allotted to them.

The allocation of criminal jurisdiction over crimes committed by Indians or in Indian country is "anomalous ... and of a complex character" because of the status of Indian tribes as quasi-sovereign governmental entities. *United States v. Kagama*, 118 U.S. 375, 381, 6 S.Ct. 1109, 1112, 30 L.Ed. 228 (1886); *United States v. Johnson*, 637 F.2d 1224, 1244 n. 31 (9th Cir. 1980). The sovereignty of the Indian tribes with respect to criminal matters "is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers." *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978).

Congress set forth jurisdictional boundaries for crimes committed within Indian

country [1] in 18 U.S.C. § 1152, which provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to Indian country.

> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offense is or may be secured to the Indian tribes respectively.

*Id.* This case, involving Indian on Indian crime within Indian country, falls squarely within the § 1152 exclusion. The Cherokee Tribe, not the United States, retains the sovereign power to punish Indian on Indian crime committed within Indian country by the plain terms of the statute.[2]

The sole, express, congressional exceptions to the jurisdiction of the Cherokee Tribe over Indian on Indian crime are set forth at 18 U.S.C. § 1153 [known as the Major Crimes Act and referred to herein as the Act]. The Act provides the exclusive list of Indian on Indian crimes committed in Indian country over which the federal courts have jurisdiction.[3] *United States v. Welch*, 822 F.2d 460, 564 (4th Cir.1987). The Act provides in relevant part:

> Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses....

18 U.S.C. § 1153(a).

Neither the parties, nor the majority dispute that the district court would have absolutely no jurisdiction to enter judgment if the United States attempted to directly try and convict Walkingeagle in federal court under 18 U.S.C. § 113(d), the lesser included offense of §§ 113(c) and (f), the two crimes actually listed in § 1153 with which Walkingeagle was charged. The assault set forth in § 113(d) is simply not included in the Major Crimes Act list of offenses for which federal court jurisdiction exists.

What the United States may not do directly, however, it may now accomplish by indirection under the majority's holding. District courts are now empowered to try a host of crimes previously reserved to the tribal courts by the express direction of Congress by the simple expedient of those crimes being classified as lesser included offenses of the specifically enumerated crimes in § 1153. The majority's decision invites creative charging by federal prosecutors under the Act for the purpose of obtaining jurisdiction over offenses that

---

1. "Indian country" is defined at 18 U.S.C. § 1151. There is no dispute as to the locus of the crime in this case.

2. Prior to initiation of this prosecution by the United States in federal court, Walkingeagle was charged with assault and battery in the Cherokee tribal court system, but this charge was dismissed, without prejudice, pending resolution of the current matter. *See* Appellant's Brief at 5. Cherokee tribal court jurisdiction over misdemeanor assault and battery claims, the offense for which appellant was convicted in the district court, is set forth at 25 C.F.R. §§ 11.2, 11.39. Punishment is limited to six months' labor or imprisonment. Fines and restitution to the victim may be imposed. 25 C.F.R. § 11.33. The maximum term of imprisonment is identical to that actually imposed by the district court.

3. A federal court might have jurisdiction over Indian on Indian crime where the crime defined in the statute is one of general application, not limited by situs, such as assaulting a federal officer. *See* The Honorable David B. Sentelle and Melanie T. Morris, *Criminal Jurisdiction on the North Carolina Cherokee Indian Reservation—A Tangle of Race and History,* 24 Wake Forest L.Rev. 335, 345 (1989).

would not otherwise be triable in federal court, but only in tribal courts.[4]

Resolution of the jurisdictional question in this case turns in large part on the interpretation and application of *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). *Keeble* neither compels nor counsels the result reached today.

In *Keeble*, the Indian defendant was charged, tried, convicted, and sentenced for a crime specifically enumerated in the Act. *Id.* at 206–07, 93 S.Ct. at 1994–95. No conviction for a lesser included offense, and consequently jurisdiction to sentence on such offense, was at issue in that case. At the close of trial, the Indian *defendant* requested, but was refused, an instruction on simple assault, a lesser included offense of the charged crime. *Id.* The validity of this denial was the sole issue before the Court. *Id.* at 207, 93 S.Ct. at 1995.

After discussing the development of lesser included offense doctrine, its inclusion in Fed.R.Crim.Proc. 31, and the history of the Act, the Court stated "that Congress [did not] intend[ ] to deprive Indian defendants of *procedural* rights guaranteed to other defendants, or to make it easier to convict an Indian than any other defendant." *Id.* at 212, 93 S.Ct. at 1997 (emphasis added). The Court noted, as has the majority, that 18 U.S.C. § 3242 provides that Indians "shall be *tried* in the same courts, *and in the same manner*, as are all other persons committing any of the above crimes [including those listed at § 1153]." *Id.* (emphasis added). The *Keeble* Court particularly noted that the failure to give the lesser included offense instruction could have skewed the decisionmaking of the jury with respect to the charged crime by forcing the jury to choose between an all or nothing proposi-

tion of convicting defendant despite the lack of evidence or acquitting the defendant though he had, on the evidence presented, clearly committed some wrong. The Court intimated that a construction of the Act that would preclude the giving of such an instruction could cause constitutional difficulties under the Due Process Clause of the Fifth Amendment. *Keeble*, 412 U.S. at 213, 93 S.Ct. at 1998. The Court concluded by giving a very narrow construction to its holding:

> Finally, we emphasize that our decision today neither expands the reach of the Major Crimes Act *nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute.* We hold only that where an Indian is prosecuted in federal court under the provisions of the Act, the Act does not require that he be deprived of the protection afforded by an instruction on a lesser included offense. . . .

*Keeble*, 412 U.S. at 214, 93 S.Ct. at 1998 (emphasis added). The Court specifically declined to reach the issue decided today: whether or not the government was entitled to request a lesser included offense instruction in a prosecution under the Act and obtain judgment on that offense. *Id.* at 214 n. 14, 93 S.Ct. at 1998 n. 14.

Assuming, for purposes of discussion, that *Keeble* stands for the proposition that federal courts have jurisdiction to impose judgment on at least some lesser included offenses, as asserted by the majority, *ante,* p. 553, *Keeble* and the other cases cited by the majority may be distinguished on their facts from this case. In *Keeble* and each

---

4. *See* Sentelle & Morris, *supra* note 2, 355. As noted by these authors, Indian tribes have traditionally punished crime through restitutionary, rather than retributive punishments. *Id.* at 354 n. 165. This tribal tradition is specifically incorporated into the sentencing scheme for those offenses within the jurisdiction of tribal courts. *See* 25 C.F.R. § 11.33 (allowing tribal court to sentence offender to community work for tribe for fixed period in lieu of imprisonment or fines and to impose restitution order to compensate crime victim). Federal prosecutors may consider such restitutionary sentences imposed by

tribal courts inadequate punishment, and thus be motivated to seek federal court convictions. Congress, not federal prosecutors, however, is charged with setting the boundaries of federal court jurisdiction and Congress has set forth the specific crimes for which federal, not tribal, punishment is warranted. *Cf. Keeble v. United States*, 412 U.S. 205, 209–12, 93 S.Ct. 1993, 1996–97, 36 L.Ed.2d 844 (1973) (noting history of passage of Major Crimes Act and its specific intent to displace "tribal remedies [which] were either nonexistent or incompatible with principles Congress thought should be controlling").

other case, the offense charged under the Act was apparently viable at the time the case was submitted to the jury. *Keeble,* 412 U.S. at 207, 93 S.Ct. at 1995 (noting jury instructed on, and defendant convicted of, offense under the Act); *United States v. Bowman,* 679 F.2d 798, 799 (9th Cir. 1982) (noting defendant charged with crime specifically listed in § 1153, but convicted by jury only on lesser included offense charged at the request of defendant), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1204, 75 L.Ed.2d 445 (1983); *United States v. John,* 587 F.2d 683 (5th Cir.1979)[5] (same), *cert. denied,* 441 U.S. 925, 99 S.Ct. 2036, 60 L.Ed.2d 399 (1979); *Felicia v. United States,* 495 F.2d 353, 354 (8th Cir.) (same), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974). *See also, United States v. Pino,* 606 F.2d 908 (10th Cir.1979) (holding error not to give lesser included instruction where crime charged under the Act submitted to the jury). In this case, the district court granted Walkingeagle's motion for judgment of acquittal on the charged crimes, Fed.R.Crim.Proc. 29, before the case was submitted to the jury. At the time the crimes charged under the Act were dismissed, the district court should have dismissed the prosecution for want of jurisdiction.[6] Without viable charges under the Act, there is no firm jurisdictional basis for extending the federal courts' authority over the lesser included offenses, which by the terms of 18 U.S.C. § 1152, are specifically reserved to the tribal courts. All the cases upholding submission of the lesser included offense to a jury also involved submission of viable claims under the Act to the jury and a request by the defendant for the instruction. Neither situation is present here; therefore, to preserve the jurisdictional boundaries set by Congress, the case should be dismissed.

The majority and the United States rely upon procedural rules to create or sustain jurisdiction in this case despite the lack of viable claims under the Major Crimes Act. Federal Rule of Criminal Procedure 31(c)

does permit submission of a lesser included offense to the jury, but neither the rule nor the cases cited by the United States addresses the situation where the crimes giving rise to the prosecution are dismissed and no independent jurisdictional basis exists over the lesser included offense. In *United States v. LoRusso,* 695 F.2d 45 (2d Cir.1982), *cert. denied sub nom. Errante v. United States,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983), the case upon which the United States principally relies, the court possessed full jurisdiction to try the lesser included offense independent of the charged offenses. No one contends here that an independent jurisdictional basis exists for the lesser included offense. Neither the Federal Rules of Civil Procedure nor the Bankruptcy Rules expand the jurisdiction of the federal courts. *See* Fed. R.Civ.Proc. 82; Bankr.Rule 9030. Though the Federal Rules of Criminal Procedure do not contain a similar disclaimer, they, too, should not be employed in a manner that expands criminal jurisdiction beyond that set by Congress.

The United States argues that since *Keeble* permits an Indian defendant to request a lesser included offense instruction, the principle of mutuality governing lesser included offenses requires the federal court to give the lesser included instruction in this case. *See Schmuck v. United States,* 489 U.S. 705, 717, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989) (noting that adoption of the "elements test" for determination of lesser included offenses is consistent with the principle of mutuality implicit in Fed. R.Crim.Proc. 31(c)). Mutuality of remedies is not the issue here, however, but rather jurisdiction. Where there is no jurisdiction over a crime, no one is entitled to an instruction with respect to that crime. Where jurisdiction does exist, then the principle of mutuality has some operative force; both the prosecution and the defendant may request the instruction. This is consistent with the Supreme Court's treatment

---

**5.** Jurisdiction in *John* was actually predicated on 18 U.S.C. § 1152; therefore, the remarks in that case respecting § 1153 are merely dicta.

**6.** While this might not be the most efficient use of judicial resources, concerns for efficiency are no substitute for an explicit grant of jurisdiction.

of lesser included offense instructions in *Spaziano v. United States*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). In *Spaziano*, the district court had no jurisdiction over a lesser included offense to capital murder because of a statute of limitations. The Supreme Court held that no party, particularly the defendant, had the right to receive a lesser included offense instruction where there was no jurisdiction over that offense. *Id.* at 456–57, 104 S.Ct. at 3160–61. The Court noted that the defendant could have created jurisdiction by waiving the statute of limitations defense so that both he and the prosecution would each have the opportunity to receive the benefit of the instruction.[7]

Aside from distinguishing *Keeble* and related cases on their facts, *Keeble* does not, as the majority suggests, hold that federal courts have some jurisdiction to enter judgment on lesser included offenses. The Keeble majority *did not* say that the giving of such an instruction created jurisdiction to sentence and enter judgment against the Indian defendant on the lesser included offense. The *Keeble* majority specifically noted "that our decision today neither expands the reach of the Major Crimes Act nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute." *Id.* 412 U.S. at 214, 93 S.Ct. at 1998. The Court took great pains to specifically characterize the giving of the lesser included offense instruction as a "procedural right" afforded by the Major Crimes Act and particularly noted the pro-

cedural benefits to defendant of the charge and its possible effect on jury deliberations with respect to *the Major Crimes Act charges*. *Id.* at 212–13, 93 S.Ct. at 1997–98. The Court specifically avoided the constitutional question of whether or not due process required the giving of the instruction. *See supra*, note 7. *Keeble* stands only for the proposition that Congress, through the Act, specifically 18 U.S.C. § 3234, has provided additional safeguards to Indian defendants by allowing them to receive the benefits of a lesser included offense instruction without necessarily entailing the costs that normally attend that instruction, namely the possibility of judgment on that offense. *See United States v. Johnson*, 637 F.2d 1224, 1244 (9th Cir. 1980) (dictum) ("*Keeble* was concerned only with the Indian defendant's right to the same protection afforded non-Indians against being convicted unfairly of the charged offense; it was not concerned with the power of the federal courts to convict and sentence for commission of the lesser included offense"); *Bowman*, 679 F.2d at 801–02 (Henderson, J., dissenting).[8]

At least three courts of appeal, the Fifth, Ninth, and Eighth, have held that a district court has jurisdiction to impose judgment on a lesser included offense charged under circumstances such as those in *Keeble*. *United State v. Bowman*, 679 F.2d 798, 799 (9th Cir.1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1204, 75 L.Ed.2d 445 (1983); *United States v. John*, 587 F.2d 683 (5th Cir.1979), *cert. denied*, 441 U.S. 925, 99 S.Ct. 2036, 60 L.Ed.2d 399 (1979); *Felicia*

7. In footnote five of the opinion, the *Spaziano* court addressed *Keeble* by noting that the Court "has assumed that if a defendant is constitutionally entitled to a lesser included offense instruction, the trial court has authority to convict him of the lesser included offense." *Spaziano*, 468 U.S. at 454 n. 5, 104 S.Ct. at 3159 n. 5. This statement is nonsensical with respect to *Keeble*, however, since *Keeble* was decided on a statutory, not constitutional, basis and specifically stated that the court's jurisdiction was not at issue in the opinion. *See Keeble*, 412 U.S. at 212–14, 93 S.Ct. at 1997–99.

8. This interpretation of *Keeble* is consistent with the Supreme Court's decision in *Spaziano*. In *Spaziano*, the Court concluded the Due Process Clause of the Fourteenth Amendment does not

require the giving of a lesser included offense instruction where a court has no jurisdiction over the lesser included offense. *Id.* 468 U.S. at 456, 104 S.Ct. at 3160. As interpreted in *Keeble*, the Act affords greater protection to Indian defendants by specifying in 18 U.S.C. § 3242 that Indians "shall be tried in the same courts and in the same manner as are all other persons...." The clear import of *Keeble* is that, but for the provision in the Act requiring, as a matter of procedure, that courts give the instruction, federal courts could not give the instruction unless it was constitutionally required. *Id.* 412 U.S. at 213, 93 S.Ct. at 1998. *Spaziano* has settled the question of constitutional requirement in the negative where no jurisdiction exists over the lesser included offense.

*v. United States,* 495 F.2d 353, 354 (8th Cir.), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974). Each has acknowledged that jurisdiction to sentence on the lesser included offense must be derived "implicitly" rather than from any text in a statute such as the Act or specific command in case law, particularly *Keeble. Bowman,* 679 F.2d at 799; *John,* 587 F.2d at 688; *Felicia,* 495 F.2d at 355. Though it would create a conflict with these circuits, this line of cases creating criminal jurisdiction by implication should be rejected. Absent specific Congressional enactments to the contrary, tribal courts retain exclusive jurisdiction over Indian on Indian crime committed in Indian country. 18 U.S.C. § 1152.

Concluding that jurisdiction does not exist in this case for one of the two reasons set forth above is sensible for two reasons. First, it prevents "the Government ... from infring[ing] the residual jurisdiction of a tribe by bringing prosecutions in federal court" where Congress has not specifically authorized such prosecutions by statute. *Keeble,* 412 U.S. at 214, 93 S.Ct. at 1998. In the Act, Congress has plainly set forth those crimes in which the United States has a paramount enforcement interest. *See* 18 U.S.C. § 1153. The United States had its opportunity to enforce that interest in a federal court forum and failed. Congress has explicitly *not* claimed an interest in enforcement of lesser offenses. To the contrary, Congress has specifically stated in 18 U.S.C. § 1152 that the punishment of such offenses properly belongs to the Indian tribes; therefore, the tribal courts have the exclusive responsibility for enforcing that interest.[9]

Second, disallowing a lesser included offense charge when the overlying charges under the Act are dismissed before submission to the jury saves the court from the role of amateur psychologist attempting to fathom the motivation of the United States Attorney in bringing the case to determine if deliberate overcharging exists. There is simply no meaningful way of making such an assessment. The judiciary is placed in the inappropriate position of questioning the charging decisions of the executive. Fortunately, the legislative branch, Congress, has given us a means of avoiding the inquiry by explicitly setting forth the crimes that are within the federal court's jurisdiction, leaving all others to the tribal courts. The court should not adopt a rule which forces the court into second-guessing the charging decisions of the prosecutor.

As noted by the court in *United States v. Johnson,* 637 F.2d 1224 (9th Cir.1980):

> Unusual, ironic and paradoxical situations are more the rule than the exception where federal Indian law is concerned ... owing to the unique status of the Indian tribes as quasi-sovereign entities.

*Id.* at 1244 n. 31. I think a straightforward acknowledgment of the anomaly, if it is an anomaly, presented by reversing the conviction is preferable to extending the jurisdiction of the federal courts by implication rather than the express will of Congress; therefore, I respectfully dissent.

---

9. There is no danger here that a wrongdoer will go unpunished if the case is dismissed for lack of jurisdiction. Walkingeagle would still be amenable to prosecution in the Cherokee tribal courts on the misdemeanor assault and battery charge. 25 C.F.R. § 11.39. Such a prosecution would not be barred by the Double Jeopardy Clause because two separate sovereigns are involved in the prosecution of the appellant. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).